## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

| | |
|---|---|
| BRENT LEBLANC, Individually and on Behalf of All Others Similarly Situated,<br><br>v.<br><br>HALLIBURTON COMPANY. | Case No.: 1:17-cv-00718<br>Collective Action (29 U.S.C. § 216(b))<br>Class Action (FED. R. CIV. P. 23) |

### CLASS AND COLLECTIVE ACTION COMPLAINT

#### SUMMARY

1. Brent LeBlanc brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and the New Mexico Minimum Wage Act, NMSA § 50-4-19, *et seq.*, ("NMMWA") from Halliburton Company ("Halliburton").

2. Halliburton is an oil and natural gas exploration and production company operating worldwide and throughout the United States, including in New Mexico. To do so, Halliburton employs oilfield personnel to carry out its work.

3. LeBlanc and the other workers like him were typically scheduled for 12 hour shifts, 7 days a week, for weeks at a time. But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

4. Instead of paying overtime as required by the FLSA and NMWWA, Halliburton paid these workers a daily rate with no overtime pay and improperly classified them as independent contractors.

5. This class and collective action seeks to recover the unpaid overtime wages and other damages owed to these workers under the FLSA and NMMWA.

#### JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7.	The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

8.	Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

9.	LeBlanc and other Class Members perform work-related tasks for Halliburton in this District.

10.	Halliburton has availed itself to the jurisdiction of this Court. Halliburton maintains offices and business operations in this District, including in Carlsbad, New Mexico.

### THE PARTIES

11.	From August 2014 to December 2015, LeBlanc worked exclusively for Halliburton as a Directional Driller.

12.	LeBlanc was paid a day-rate with no overtime compensation and was classified as an independent contractor.

13.	LeBlanc brings this action on behalf of himself and all other similarly situated workers who were classified as independent contractors and paid by Halliburton's day-rate system.

14.	Halliburton paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA and NMMWA.

15.	LeBlanc's written consent to be a party plaintiff is attached as Exhibit A.

16.	LeBlanc represents at least two classes of similarly situated co-workers.

17.	First, LeBlanc represents a class of similarly situated Directional Drillers under the FLSA pursuant to 29 U.S.C. § 216(b). The FLSA Class sought to be certified is defined as:

> **All current and former Directional Drillers employed by, or working on behalf of, Halliburton Company in the United States in the past three years who were classified as independent contractors and paid a day rate.**

18. Second, LeBlanc represents a class of similarly situated Directional Drillers under the NMMWA pursuant to Federal Rule of Civil Procedure 23. The NMMWA Class sought to be certified is defined as:

> **All current and former Directional Drillers employed by, or working on behalf of, Halliburton Company in New Mexico in the past three years who were classified as independent contractors and paid a day rate.**

19. Collectively, the FLSA Class Members and NMMWA Class Members are referred to as "Putative Class Members."

20. **Halliburton Company** is a Delaware corporation that does business in a systematic and continuous manner in New Mexico, but that does not maintain an agent for service of process in New Mexico. It may therefore be served pursuant to NMSA § 38-1-16(B) and New Mexico Rule of Civil Procedure 1-004(G) by serving its registered agent for service of process, **Capitol Services, Inc., 1675 S. State St. Ste. B, Dover, DE 19901**, or by any other method permitted by law.

## COVERAGE UNDER THE FLSA

21. At all times hereinafter mentioned, Halliburton has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

22. At all times hereinafter mentioned, Halliburton has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

23. At all times hereinafter mentioned, Halliburton has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

24. At all times hereinafter mentioned, LeBlanc and the Putative Class Members and Hourly Class Members were engaged in commerce or in the production of goods for commerce.

## FACTS

25. Halliburton is an oil and natural gas company operating worldwide and throughout the United States, including New Mexico, and employs oilfield personnel to carry out its work.

26. Many of these individuals worked for Halliburton performing the same or substantially similar job duties as LeBlanc and misclassified by Halliburton as so-called independent contractors in connection with Halliburton's oilfield operations.

27. While exact job titles and job duties may slightly differ, LeBlanc and Putative Class Members were subjected to the same or similar illegal pay practices for similar work.

28. Specifically, Halliburton classified the Putative Class Members as independent contractors and paid them a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

29. For example, LeBlanc worked exclusively for Halliburton from approximately August 2014 until December 2015 as a Directional Driller.

30. Throughout his employment with Halliburton, LeBlanc was classified as an independent contractor and paid on a day-rate basis.

31. As a Directional Driller, LeBlanc's primary job duties included operating oilfield machinery, collecting/relaying data, and reporting his daily activities to field supervisors for analysis.

32. Halliburton typically scheduled LeBlanc to work 12 hour shifts, for as many as 7 days a week.

33. LeBlanc worked well in excess of 40 hours each week while employed by Halliburton.

34. The work LeBlanc performed was an essential party of Halliburton's core business.

35. During LeBlanc's employment with Halliburton while he was classified as an independent contractor, Halliburton and/or the company it contracted with exercised control over all aspects of his job.

36. Halliburton did not require any substantial investment by LeBlanc in order for him to perform the work required of him. Halliburton determined LeBlanc's opportunity for profit and loss.

37. LeBlanc was not required to possess any unique or specialized skillset (other than that maintained by all other individuals working in his same job position) to perform his job duties.

38. LeBlanc worked exclusively for Halliburton, while working for Halliburton.

39. Indeed, Halliburton and/or the company with which it contracted controlled all the significant or meaningful aspects of the job duties performed by LeBlanc.

40. Halliburton ordered the hours and locations LeBlanc worked, tools used, and rates of pay received.

41. Even though LeBlanc often worked away from Halliburton's offices without the presence of a direct Halliburton supervisor, Halliburton still controlled all aspects of LeBlanc's job activities by enforcing mandatory compliance with Halliburton's and/or its client's policies and procedures.

42. No real investment was required of LeBlanc to perform his job.

43. More often than not, LeBlanc utilized equipment provided by Halliburton and/or its client to perform his job duties.

44. LeBlanc did not provide the equipment he worked with on a daily basis. Halliburton and/or its clients made the large capital investments in buildings, machines, equipment, tools, and supplied in the business in which LeBlanc worked.

45. LeBlanc did not incur operating expenses like rent, payroll, marketing, and insurance.

46. LeBlanc was economically dependent on Halliburton during his employment.

47. Halliburton set LeBlanc's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for Halliburton.

48. Halliburton directly determined LeBlanc's opportunity for profit and loss. LeBlanc's earning opportunity was based on the number of days Halliburton scheduled him to work.

49. Very little skill, training, or initiative was required of LeBlanc to perform his job duties.

50. Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by Halliburton and/or its clients.

51. Virtually every job function was pre-determined by Halliburton and/or its clients, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

52. The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

53. Moreover, the job functions of the Putative Class Members were primarily manual labor/technical in nature, requiring little to no official training, much less a college education or other advanced degree.

54. The Putative Class Members did not have any supervisory or management duties.

55. Finally, for the purposes of an FLSA and NMMWA overtime claim, the Putative Class Members performed substantially similar job duties related to servicing oil and gas operations in the field.

56. LeBlanc performed routine manual and technical labor duties that were largely dictated by Halliburton and/or its clients.

57. LeBlanc was not employed by Halliburton on a project-by-project basis. In fact, while LeBlanc was classified as an independent contractor, he was regularly on call for Halliburton and/or its clients and was expected to drop everything and work whenever needed.

58. All the Putative Class Members perform the same or similar job duties and are subjected to the same or similar policies and procedures which dictate the day-to-day activities performed by each person. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

59. The Putative Class Members all worked in excess of 40 hours each week and were often scheduled for 12 hour shifts for weeks at a time.

60. Instead of paying them overtime, Halliburton paid the Putative Class Members a day-rate.

61. Halliburton denied the Putative Class Members overtime for any and all hours worked in excess of 40 hours in a single workweek.

62. Halliburton's policy of failing to pay overtime to its Directional Drillers, including LeBlanc, violates the FLSA and NMMWA because these workers are, for all purposes, employees performing non-exempt job duties.

63. It is undisputed that the Putative Class Members are maintaining and working with oilfield machinery, performing manual labor, and working long hours in the field.

64. Because LeBlanc (and Putative Class Members) was misclassified as an independent contractor by Halliburton, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

65. Halliburton's day-rate system violates the FLSA and NMMWA because LeBlanc and the Putative Class Members did not receive any pay for hours worked over 40 hours each week.

**FLSA AND NMMWA VIOLATIONS**

66. As set forth herein, Halliburton violated the FLSA and NMMWA by failing to pay LeBlanc and the Putative Class Members overtime under the day rate system for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a); NMSA § 50-4-22.

67. Halliburton knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay LeBlanc and the Putative Class Members proper overtime compensation.

68. Halliburton's failure to pay overtime compensation to LeBlanc and the Putative Class Members was neither reasonable, nor was the decision not to pay overtime made in good faith.

69. Accordingly, LeBlanc and the Putative Class Members are entitled to overtime wages under the FLSA and NMMWA in an amount equal to 1.5 times their rates of pay, plus liquidated damages or double damages, attorney's fees, and costs. 29 U.S.C. § 216(b); NMSA § 50-4-26.

70. The improper pay practices at issue were part of a continuing course of conduct, entitling LeBlanc and the NMMWA Class Members to recover for all such violations, regardless of the date they occurred. NMSA § 50-4-32.

**CLASS AND COLLECTIVE ACTION ALLEGATIONS**

71. LeBlanc incorporates all previous paragraphs and alleges that the illegal pay practices Halliburton imposed on him were likewise imposed on the Putative Class Members.

72. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and NMMWA.

73. Numerous other individuals who worked with LeBlanc indicated they were improperly classified as independent contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and/ or federal wage laws.

74. Thus, Halliburton imposed a uniform practice or policy on LeBlanc and the Putative Class Members regardless of any individualized factors.

75. Based on his experiences and tenure with Halliburton, LeBlanc is aware that Halliburton's illegal practices were imposed on the Putative Class Members.

76. Putative Class Members were all improperly classified as independent contractors and not afforded the overtime compensation when they worked in excess of 40 hours per week.

77. Halliburton's failure to pay wages and overtime compensation at the rates required by the FLSA and NMMWA result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the Putative Class Members.

78. LeBlanc's experiences are therefore typical of the experiences of the Putative Class Members.

79. The specific job titles or precise job locations of the various Putative Class Members do not prevent class or collective treatment.

80. LeBlanc has no interests contrary to, or in conflict with, the Putative Class Members. Like each member of the proposed classes, LeBlanc has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

81. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

82. Absent this action, many Putative Class Members likely will not obtain redress of their injuries and Halliburton will reap the unjust benefits of violating the FLSA and NMMWA.

83. Furthermore, even if some of the Putative Class Members could afford individual litigation against Halliburton, it would be unduly burdensome to the judicial system.

84. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

85. The questions of law and fact common to each of the Putative Class Members predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    (a) Whether Halliburton employed the Putative Class Members within the meaning of the FLSA and NMMWA;

    (b) Whether the Putative Class Members were exempt from overtime;

    (c) Whether the Putative were not paid overtime at one and one half their regular rate of pay;

    (d) Whether Halliburton's decision to not pay overtime to the Putative Class Members was made in good faith; and

    (e) Whether Halliburton's violation of the FLSA was willful.

86. LeBlanc's claims are typical of the Putative Class Members claims. LeBlanc and the Putative Class Members Class Members have sustained damages arising out of Halliburton's illegal and uniform employment policy.

87. LeBlanc knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

88. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude class or collective action treatment.

## JURY DEMAND

89. LeBlanc demands a trial by jury.

## RELIEF SOUGHT

90. WHEREFORE, LeBlanc prays for judgment against Halliburton as follows:

    (a) For an order certifying class action(s) under Rule 23 for the purposes of the claims under New Mexico law;

    (b) For an order certifying this case as a collective action for the purposes of the FLSA claims;

(c) For an order finding Halliburton liable for violations of state and federal wage laws with respect to LeBlanc and all Putative Class Members covered by this case;

(d) For a judgment awarding all unpaid wages, liquidated damages, and/or penalty damages, to LeBlanc and all Putative Class Members covered by this case;

(e) For a judgment awarding LeBlanc and all Putative Class Members covered by this case their costs of this action;

(f) For a judgment awarding LeBlanc and all Putative Class Members covered by this case their attorneys' fees;

(g) For a judgment awarding LeBlanc and all Putative Class Members covered by this case pre- and post-judgment interest at the highest rates allowed by law; and

(h) For all such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Matthew S. Parmet*
_____
Richard J. (Rex) Burch
Texas Bar No. 24001807
Matthew S. Parmet
D.N.M. Id. No. 16-155
**BRUCKNER BURCH PLLC**
8 Greenway Plaza, Suite 1500
Houston, Texas 77046
Telephone: (713) 877-8788
Telecopier: (713) 877-8065
rburch@brucknerburch.com
mparmet@brucknerburch.com

Michael A. Josephson
Texas Bar No. 24014780
*(seeking admission pro hac vice)*
Andrew W. Dunlap
Texas Bar No. 24078444
*(seeking admission pro hac vice)*
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Telephone: (713) 352-1100
Telecopier: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com

**Attorneys for Plaintiff**