IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

BRENT LeBLANC, *Individually and
on behalf of all others similarly situated*, et al.,

    Plaintiffs,

vs.                                                                                   Civ. No. 17-718 KG/GJF

HALLIBURTON COMPANY,

    Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court upon Defendant's Motion to Compel Arbitration and Dismiss the Claims of 14 Opt-In Plaintiffs, and Defendant's Motion to Compel Arbitration and Dismiss the Claims of 16 Plaintiffs, both filed on July 31, 2019. (Docs. 103 and 104). Plaintiffs filed responses to the Motions to Compel Arbitration on August 21, 2019, and Defendant filed replies on September 9, 2019. (Docs. 105, 106, 107, and 108). Having considered the Motions to Compel Arbitration, the accompanying briefs, and the relevant law, the Court denies both Motions to Compel Arbitration.

    *I.*    *Background*

On July 10, 2017, Plaintiff Brent LeBlanc filed a Class and Collective Action Complaint in which he alleged Defendant failed to pay him and similarly situated workers overtime in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, and the New Mexico Minimum Wage Act (NMMWA), NMSA 1978, § 50-4-19, *et seq.* (Doc. 1). Defendant filed an Answer to the Complaint on August 28, 2017. (Doc. 10). On October 20, 2017, the Honorable Gregory J. Fouratt, the assigned Magistrate Judge, held a Rule 16 Scheduling Conference and set pretrial deadlines and a deadline for Plaintiff LeBlanc to file a motion for conditional

certification of a collective action under the FLSA. (Doc. 21). On January 2, 2018, Plaintiff Keith Briggs filed a notice of consent to join this action. (Doc. 26). Also on January 2, 2018, Plaintiffs filed an opposed Motion to Certify a Collective Action. (Doc. 27). Defendant filed a response to the Motion to Certify on February 2, 2018, and Plaintiffs filed a reply on February 13, 2018. (Docs. 34 and 35).

On August 21, 2018, the Court entered a Memorandum Opinion and Order granting the Motion to Certify a Collective Action and conditionally certifying a class of: "Directional drillers employed by, or working on behalf of, Halliburton Company as independent contractors any time between three years prior to the date of this Memorandum and Order of Conditional Certification, and the present." (Doc. 51) at 5. Pursuant to the Court's Memorandum Opinion and Order, between October 26, 2018, and January 3, 2019, thirty-six additional individuals filed consents to join this action, bringing the total number of Plaintiffs to thirty-eight. (Docs. 60-64, 67, 69, 73, 77, 81, and 82).

On March 11, 2019, Defendant sent Plaintiffs a meet-and-confer letter regarding Defendant's intention to compel arbitration for certain Plaintiffs. (Doc. 103) at 9; *see also* (Doc. 87) at 2 (March 15, 2019, Joint Status Report and Revised Joint Discovery Plan stating: "Defendant may file a motion to arbitrate claims of certain opt-in plaintiffs, but Defendant is currently waiting for a decision from Plaintiff regarding whether Plaintiff agrees to arbitrate those opt-ins' claims."). On May 15, 2019, Plaintiffs filed a First Amended Class and Collective Action Complaint, adding five of the opt-in Plaintiffs as named Plaintiffs, and adding state law claims under Title 34 of the North Dakota Century Code (North Dakota Wage Laws) and the Pennsylvania Minimum Wage Act (PMWA). (Doc. 94). Defendant filed an Answer to the First

Amended Complaint on June 14, 2019, in which it asserted arbitration as an affirmative defense. (Doc. 99) at 20.

Thereafter, on July 10, 2019, the assigned Magistrate Judge entered an Order staying discovery and setting a deadline for Defendant to file a motion to compel arbitration. (Doc. 102). On July 31, 2019, Defendant filed its two Motions to Compel Arbitration. (Docs. 103 and 104). In the first Motion to Compel Arbitration, Defendant contends fourteen Plaintiffs signed contracts with Defendant agreeing to arbitrate their claims and waiving their right to participate in a collective action. (Doc. 103) at 8-9. In the second Motion to Compel Arbitration, Defendant contends sixteen Plaintiffs signed binding employment agreements with a third-party service provider (Upstream Directional Consultants) agreeing to arbitrate their claims with Defendant and waiving their right to participate in a collective action. (Doc. 104) at 9-10.

II. *Legal Standard*

Under the Federal Arbitration Act (FAA), written agreements to submit to arbitration are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. While courts routinely recognize that arbitration agreements are to be enforced, the rule is not without exception. The Tenth Circuit has recognized that waiver by conduct in litigation is grounds to deny enforcement of an arbitration agreement. *See Reid Burton Constr., Inc. v. Carpenters Dist. Council of S. Colo.*, 535 F.2d 598, 604 (10th Cir. 1976) ("It is entirely appropriate in some instances for a district court to retain … jurisdiction of an arbitrable dispute where, because of conduct before the court, it may be deemed that a party is prevented on the basis of some equitable principle from asserting a right to arbitration.").

### III.   *Discussion*

In both Motions to Compel Arbitration, Defendant asserts thirty of the thirty-eight Plaintiffs signed agreements to arbitrate their claims with Defendant and waived their right to participate in a collective action. (Doc. 103) at 10; (Doc. 104) at 11-12. Based on where Plaintiffs signed the agreements, Defendant states Texas law governs 28 agreements, Pennsylvania law governs Plaintiff Tong Xiong's agreement, and Minnesota law governs Plaintiff Robert Walsh's agreement. (Doc. 103) at 12-13; (Doc. 104) at 14-15. Defendant argues any question of arbitrability, including waiver of the right to enforce the arbitration agreements, is a question for the arbitrator, not the Court. (Doc. 103) at 11-15; (Doc. 104) at 13-16. However, if the Court determines that it should decide arbitrability, Defendant contends the arbitration agreements are valid and encompass Plaintiffs' claims, and Defendant has not waived its right to arbitration. (Doc. 103) at 15-20; (Doc. 104) at 16-24. Defendant asks the Court to dismiss Plaintiffs' claims with prejudice because they agreed to arbitrate their claims and waived their right to participate in a collective or class action. (Doc. 103) at 21-22; (Doc. 104) at 24-25.

In response to both Motions to Compel Arbitration, Plaintiffs argue Defendant waived its right to arbitrate by undertaking actions inconsistent with that right. (Doc. 105) at 8-10; (Doc. 106) at 2-4. Plaintiffs further contend fourteen of the agreements are unenforceable because Defendant solicited the agreements after this lawsuit was underway. (Doc. 105) at 4-7. Plaintiff Brooks Hondl also argues his arbitration agreement is invalid because Defendant has only provided the signature page without the remainder of the agreement. *Id.* at 11.

In its replies, Defendant maintains that it promptly sought to enforce arbitration as soon as it received all of the agreements. (Doc. 107) at 4-6; (Doc. 108) at 2-4. Defendant also argues the agreements are enforceable because they were executed as part of Defendant's ordinary

course of business before Plaintiffs were notified of the collective action and filed their consents to join the action. (Doc. 107) at 2-3. Additionally, Defendant contends it has sufficiently established the existence of Plaintiff Hondl's arbitration agreement. *Id.* at 6.

### A. Question of Arbitrability for Court to Decide, Federal Law Applies

As a threshold matter, Defendant argues the issues of whether the arbitration agreements are enforceable and whether Defendant waived its right to enforce them are for the arbitrator to decide, not the Court. (Doc. 103) at 13-15; (Doc. 104) at 15-16. Defendant bases this assertion on clauses in the agreements designating the arbitrator as the decision-maker regarding arbitrability, and on the agreements' incorporation of the rules of the American Arbitration Association which provide that arbitrability is a question for the arbitrator. *Id.* Additionally, Defendant states arbitrability is a question for the arbitrator whether the Court applies New Mexico, Texas, Pennsylvania, or Minnesota law. Plaintiffs do not address this argument in their responses.

The Tenth Circuit has not issued a controlling decision on whether arbitrability is an issue for the arbitrator or the court to decide. However, in *Pre-Paid Legal Servs. v. Cahill*, the Tenth Circuit indicated courts should decide the question of whether a party waived its right to arbitrate. 786 F.3d 1287 (10th Cir. 2015). There, the Tenth Circuit considered whether the arbitrator or the court should decide whether a party had defaulted on its agreement to arbitrate under the FAA. *Id.* at 1295. The Tenth Circuit found the issue was for the court, reasoning that this question required interpretation of a federal statute (Section 3 of the FAA), and not of the "arbitrator's own rules." *Id.* In accordance with this ruling, other courts in this district have held that the question of waiver is for courts to decide. *See, e.g., Goldgroup Res., Inc. v. DynaResource De Mexico, S.A. De C.V.*, 381 F. Supp. 3d 1332, 1347-49 (D. Colo. 2019) (relying

5

on *Pre-Paid Legal Services* in finding issue of waiver should be decided by court); *Blanco v. Sterling Jewelers Inc.*, 2010 WL 466760, at *3-4 (D. Colo.) (finding court should decide question of whether party's litigation-related conduct waived right to arbitration); and *Price v. Random House Inc.,* 2009 WL 3415821, *6 (D. Colo.) ("Whether the Plaintiffs, by their litigation conduct, have waived the right to arbitrate is a matter for this court to determine.").

Additionally, other circuit courts have held the question of a party's waiver of its right to arbitrate is better suited for courts to decide. *See, e.g., JPD, Inc. v. Chronimed Holdings, Inc.,* 539 F.3d 388, 394 (6th Cir. 2008) (holding courts should resolve "waiver-through-inconsistent-conduct claims"); *Ehleiter v. Grapetree Shores, Inc.,* 482 F.3d 207, 217-18 (3d Cir. 2007) ("[T]he Supreme Court did not intend its pronouncements in *Howsam* and *Green Tree* to upset the traditional rule that courts, not arbitrators, should decide the question of whether a party has waived its right to arbitrate by actively litigating the case in court."); *Marie v. Allied Home Mortg. Corp.,* 402 F.3d 1, 14 (1st Cir. 2005) (finding issue of waiver of right to arbitrate for court to decide); *but see Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.,* 328 F.3d 462, 466 (8th Cir. 2003) (holding question of whether plaintiff waived right to arbitrate by pursuing litigation was for arbitrator). In *JPD*, the Sixth Circuit explained that waiver often turns on whether a party is attempting to "game the system" and courts are "most adept at policing procedure-abusing process." 539 F.3d at 394. Moreover, the court reasoned that referring a case from the court to an arbitrator to decide whether the case should be sent back to the court would be "exceptionally inefficient." *Id.*

Based on the foregoing, the Court agrees that the question of whether Defendant's conduct constitutes waiver of its right to arbitrate is properly for the Court to decide. Not only is the Court better suited to consider and weigh the consequences of Defendant's litigation-related

conduct, it also would be inefficient to send this case to an arbitrator to decide whether it should be sent back to the Court. Additionally, the Court finds that federal law governs this question. *See, e.g., Healy v. Cox Commc'ns, Inc.*, 790 F.3d 1112, 1115-21 (10th Cir. 2015) (applying federal law to issue of waiver of right to arbitrate); *Sovak v. Chugai Pharm. Co.,* 280 F.3d 1266, 1270 (9th Cir. 2002) ("[T]he question of whether a party has waived its right to compel arbitration directly concerns the allocation of power between courts and arbitrators. Accordingly, the FAA, and not [state] law, supplies the standard for waiver.") (citations omitted); *S & H Contractors, Inc. v. A.J. Taft Coal Co., Inc.,* 906 F.2d 1507, 1514 (11th Cir. 1990) ("Our determination of whether [plaintiff] waived its right to arbitration ... is controlled solely by federal law."); *Kathan v. Autovest, LLC*, 2019 WL 4757870, at *1 (D. Utah) ("[F]ederal courts have consistently held that federal law is used to determine whether the right to arbitrate has been waived."); *Blanco*, 2010 WL 466760, at *4 ("Whether waiver has occurred is a question of federal law.") (collecting cases).

    B. *Defendant Waived its Right to Compel Arbitration*[1]

In *Peterson v. Shearson/American Express, Inc.*, the Tenth Circuit identified six factors to consider in analyzing whether a party waived its right to enforce arbitration:

> (1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [*e.g.*, taking advantage of

---

[1] The issue of whether Defendant waived its right to arbitrate pertains to all arbitration agreements, while Plaintiffs only challenge the enforceability of fourteen of the arbitration agreements. Because the issue of waiver is determinative as to all agreements, the Court finds it most efficient to address this issue first.

7

> judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled, or prejudiced the opposing party.

849 F.2d 464, 467-68 (10th Cir. 1988) (citation omitted) (brackets in original). These factors are not a balancing test, nor are they to be applied mechanically, "rather these factors reflect certain principles that should guide courts in determining whether it is appropriate to deem that a party has waived its right to demand arbitration." *Hill v. Ricoh Am. Corp.*, 603 F.3d 766, 773 (10th Cir. 2010). Moreover, in making this determination, the Court's "overarching consideration is whether the party now seeking arbitration is improperly manipulating the judicial process." *BOSC, Inc. v. Bd. of Cnty. Comm'rs*, 853 F.3d 1165, 1174 (10th Cir. 2017) (citation omitted). Additionally, "[t]he burden of persuasion lies with the party claiming that the right to demand arbitration has been waived." *Hill*, 603 F.3d at 775.

Defendant first asserts that its actions are not inconsistent with its right to arbitrate because it promptly sought arbitration as soon as it received and reviewed all of Plaintiffs' opt-in notices and arbitration agreements. (Doc. 107) at 4; (Doc. 108) at 2-3. Plaintiffs counter that Defendant knew of the arbitration agreements much earlier than the end of the opt-in period in January 2019, and its failure to raise arbitration earlier is "clearly inconsistent with the right to arbitrate." (Doc. 105) at 10; (Doc. 106) at 3-4. Specifically, Plaintiffs argue Defendant knew of the arbitration agreements signed by Plaintiffs LeBlanc and Briggs no later than June 28, 2018, because on that date Defendant attached copies of identical arbitration agreements to a motion to compel arbitration in a case in the Southern District of Texas. (Doc. 106) at 3-4 (citing *German v. Halliburton Energy Servs., Inc.*, No. 4:18-cv-00100 (S.D. Tex.)). Plaintiffs reason that, because the plaintiffs in *German* provided services to Defendant through Upstream Directional Consultants, it was aware that Plaintiffs LeBlanc and Briggs signed similar agreements as

8

employees of the same third-party service provider. *Id.* Plaintiffs further note that Defendant's delay in seeking to enforce arbitration resulted in putative collective action members receiving a notice from the Court informing them they have the right to participate in this lawsuit if they choose, but not notifying them that this right could be extinguished by a motion to compel arbitration. (Doc. 105) at 9; (Doc. 106) at 3-4.

In *Healy*, the Tenth Circuit found the defendant waived its right to seek arbitration when it failed to assert that right until after the class had been ascertained. 790 F.3d at 1119-20. The defendant argued it would have been futile to file a motion to compel arbitration against absent class members. Nevertheless, the Tenth Circuit noted that defendant "could have asserted its right to arbitrate against [named plaintiff] Healy at any time during the course of the litigation, and that it could have asserted its right to arbitrate against the absent class members as a possible defense against class certification." *Id.* at 1119. As such, even though the district court may not have been able to compel arbitration of absent class members, an earlier assertion of the right would have "ensured a more expedient and efficient resolution" and prevented "improper gamesmanship." *Id.* (relying on *Edwards v. First Am Corp.*, 289 F.R.D. 296, 307 (C.D. Cal. 2012) (holding parties may waive right to arbitrate against absent class members when they could have "asserted their intention to raise arbitration as a defense at a much earlier stage in the proceeding")).

Additionally, in *Goodly v. Check-6, Inc.*, the defendant argued it could not file its motion to compel arbitration until after the opt-in period because it could not determine whether all parties and claims were governed by arbitration agreements until after that date. 2017 WL 3269080, at *2 (N.D. Okla.). The court disagreed, finding the defendant did not need to wait for all parties to enter the case to assert its right to arbitrate. The court reasoned that defendant's

9

motion to compel plaintiffs to arbitrate their claims individually "undermines [defendant's] explanation as to why it waited to demand arbitration until after the opt-in period had closed," and found defendant "needn't have waited until *all* plaintiffs opted in" but "could have moved to compel arbitration of individual plaintiffs as each opted in." *Id.* In addition, the court found the defendant's opposition to the plaintiffs' motion for conditional class certification was inconsistent with asserting its right to arbitrate. The court explained that if the defendant had timely moved to compel arbitration, there may have been "no need to have wasted the court's and named plaintiff's time litigating conditional class certification at all." *Id.*

Similarly, although Defendant now seeks to compel Plaintiffs to arbitrate their claims individually, it could have moved to compel arbitration of individual Plaintiffs as they opted in, prior to the end of the opt-in period in January 2019. This is especially true for Plaintiff LeBlanc, who filed the original Complaint in July 2017, and Plaintiff Briggs, who joined the case in January 2018. Importantly, Defendant does not dispute Plaintiffs' assertion that it knew of these Plaintiffs' arbitration agreements as early as June 28, 2018, when it attached copies of identical agreements to a motion to compel arbitration in the *German v. Halliburton Energy Services, Inc.* case in the Southern District of Texas. *See* (Doc 106) at 3-4. Accordingly, if Defendant had timely sought enforcement of Plaintiff LeBlanc's and Plaintiff Briggs' arbitration agreements, there may have been no need for Plaintiffs to seek to certify a collective action. As explained in *Healy*, even though the court may not have been able to compel arbitration of absent class members, an earlier assertion of the right "would have ensured a more expedient and efficient resolution" of the issue. For these reasons, the Court construes Defendant's delay in seeking to enforce the arbitration agreements until after the opt-in period is inconsistent with its right to arbitrate.

10

Next, Defendant argues it has not substantially invoked the judicial process or delayed in seeking arbitration because the case is still in the discovery phase, no trial has been set, and the parties have not taken advantage of judicial discovery procedures that would not be available in arbitration. (Doc. 107) at 5; (Doc. 108) at 3-4. Defendant further notes that only Plaintiffs LeBlanc and Briggs have participated in discovery or substantial litigation in this case. (Doc. 103) at 20; (Doc. 104) at 23. In response, Plaintiffs note that Defendant did not file its Motions to Compel Arbitration until two years after Plaintiff LeBlanc filed his Complaint, during which time Defendant answered the Complaint, filed initial disclosures, propounded and responded to discovery requests, submitted multiple discovery plans to the Court, responded to discovery motions, conducted depositions, and opposed Plaintiffs' Motion for Conditional Certification. (Doc. 105) at 8; (Doc 106) at 2-3.

The Tenth Circuit has found that a party waived its right to arbitrate when it did not seek arbitration until two years after the action was filed and the parties had engaged in pretrial discovery including exchanging thousands of documents, hiring experts, and deposing witnesses. *Healy*, 790 F.3d at 1115. There, the defendant also opposed plaintiff's motion to certify a class, moved to reconsider and sought an appeal of the court's order granting class certification, and moved for summary judgment at the same time it filed the motion to compel arbitration. *Id.* at 1115, 1117. The Tenth Circuit agreed with the district court's finding that the defendant's actions "suggested an attempt to manipulate the [judicial] process, or at least to attempt multiple bites at the apple." *Id.* at 1116. Moreover, the court stated it disapproved of the defendant engaging in "heads I win, tails you lose" behavior by waiting to "see how the case was going in federal district court before deciding whether it would be better off there or in arbitration." *Id.* at

11

1120 (quoting *Cabinetree of Wisc., Inc. v. Kraftmaid Cabinetry, Inc.*, 50 F.3d 388, 391 (7th Cir. 1995)).

Similarly, in *Goodly*, the district court found the defendant substantially invoked the judicial process and delayed for too long when it waited until fourteen months after it answered the complaint to seek arbitration. 2017 WL 3269080, at *2. During this time, the parties engaged in "significant discovery" and defendant opposed plaintiffs' motion for conditional class certification. The court found the plaintiffs were prejudiced as a result of the defendant's delay because "the lead plaintiff and plaintiffs' counsel have litigated conditional certification, issued notice to potential class members, and assisted opt-in plaintiffs in filing notices of consent to join the collective action." *Id.* at *3-4. Therefore, the court found that "an order compelling arbitration would allow [the defendant] to 'take a mulligan' on conditional class certification" by undoing the effect of the court's order conditionally certifying the class. *Id.* at 4; *see also Kendall State Bank v. West Point Underwriters, LLC*, 2013 WL 66020, at *3 (D. Kan.) (finding waiver of right to arbitrate when defendant delayed eighteen months before seeking arbitration, filed motion to dismiss and counterclaim, and conducted extensive discovery).

In contrast, in *BOSC v. Bd. of Cnty. Comm'rs*, the Tenth Circuit found no waiver of the defendant's right to arbitrate even when defendant took some actions inconsistent with that right, such as filing a state court action involving the same claims and filing a response to a motion to dismiss. 853 F.3d at 1174. The Tenth Circuit emphasized that the defendant refrained from serving its complaint on the plaintiffs and voluntarily dismissed the case before the district court could rule on the plaintiffs' motion to dismiss, and that only three months passed between the date the defendant filed the case and the date it voluntarily dismissed it. *Id.* at 1175. The Tenth Circuit further noted the parties had not participated in any discovery and the court had not set

12

any deadlines or held any hearings. *Id.* Therefore, the Tenth Circuit found defendant avoided any "significant inefficiencies" or prejudice to the plaintiffs. *Id.* at 1175-76; *see also Alwert v. Cox Commc'ns, Inc.*, 835 F.3d 1195, 1205-06 (10th Cir. 2016) (finding no waiver when defendant moved to compel arbitration three weeks after answering complaint and three days after receiving responses to discovery requests); *Hill.*, 603 F.3d at 775 (finding no waiver when defendant filed motion to compel arbitration four months after filing answer to complaint, emphasizing "very little" had happened in case during that time).

This Court, unlike the court in *Hill*, cannot say "very little" has happened in this case. To the contrary, Defendant did not seek to enforce arbitration until close to two years after it answered Plaintiffs' Complaint, and during that time Defendant filed initial disclosures, served and responded to discovery requests, submitted multiple discovery plans and joint status reports to the Court, opposed Plaintiffs' discovery motions, conducted depositions, and opposed Plaintiffs' Motion for Conditional Certification. In addition, the Court has held two scheduling conferences, two discovery motion hearings, a hearing on Plaintiff's Motion for Conditional Certification, and six status conferences. The Court has also ruled on two discovery motions and granted Plaintiffs' Motion for Conditional Certification which then required the Court's approval of the proposed notice and consent forms. Even though most Plaintiffs filed their consents to opt in to this case from October 2018 to January 2019, Defendant continued to take actions inconsistent with its right to seek arbitration after the consents were filed. For example, from January 2019 through July 2019, Defendant opposed a discovery motion, filed status reports and joint discovery plans, and participated in scheduling and status conferences. Importantly, Defendant only filed its Motions to Compel Arbitration after the Court set a deadline to do so. *See* (Doc. 102). The Court, therefore, finds this case is more in line with *Healy* and *Goodly*

because of the length of time it has been pending and the extent to which the parties have engaged in litigation.

In arguing it has not waived its right to compel arbitration, Defendant relies on *Cornoyer v. AT&T Mobility Servs., LLC*, 2016 WL 6404853, at *13 (D.N.M.), where the court found no waiver even though the defendant delayed approximately seven months after the complaint was filed before moving to compel arbitration. (Doc. 103) at 20; (Doc. 104) at 22-23. *Cornoyer* is distinguishable, however, because the defendant there did not discover the plaintiff's arbitration agreement until five months after the complaint was filed, and the court found that "the delay in discovering the arbitration agreement appears to be attributable to bureaucratic inefficiencies, as opposed to trial strategies." 2016 WL 6404853, at *13. The court also emphasized the case had not progressed as far as it had in *Healy*, where the court had "read literally thousands of pages of briefs, conducted several hearings, including a class certification hearing, and issued dozens of Orders." *Id.* (quoting *Healy*, 790 F.3d at 1116-18). Here, however, Defendant does not assert there was a delay in obtaining Plaintiff LeBlanc's or Plaintiff Briggs' arbitration agreements early in the case, and this case has progressed far beyond the early stages of discovery in *Cornoyer*.

Based on the foregoing, the Court finds that Defendant took actions inconsistent with its right to arbitrate, substantially invoked the litigation machinery, and significantly delayed seeking arbitration. The Court further finds these actions prejudiced Plaintiffs. Therefore, the first, second, third, and sixth *Peterson* factors establish that Defendant has waived its right to arbitration.

*IV. Conclusion*

For the reasons stated above, the Court finds Defendant waived its right to arbitrate Plaintiffs' claims. Based on this finding, the Court does not reach Plaintiffs' arguments that Defendant improperly solicited agreements from fourteen of the Plaintiffs and failed to sufficiently prove the existence of Plaintiff Hondl's agreement.

IT IS THEREFORE ORDERED that Defendant's Motion to Compel Arbitration and Dismiss the Claims of 14 Opt-In Plaintiffs, and Motion to Compel Arbitration and Dismiss the Claims of 16 Plaintiffs, (Docs. 103 and 104), are DENIED.

*[signature]*
UNITED STATES DISTRICT JUDGE